(102 So. 453)

### CANNON v. BIRMINGHAM TRUST & SAVINGS CO. et al.   (6 Div. 979.)

(Supreme Court of Alabama.   Dec. 18, 1924.)

**1. Husband and wife** ⬅⟲31(8)—**Antenuptial agreement creating trust in favor of wife construed as relates to benefits accruing to wife.**

Antenuptial agreement creating trust in favor of wife *held* to clearly evidence intent that from proceeds of trust wife should receive exactly $100 per month, neither more nor less; any deficiency or excess to be either made up or accounted for.

**2. Husband and wife** ⬅⟲31(8)—**Antenuptial agreement creating trust in favor of wife construed as relates to wife's liability to account for income over stated amount.**

Antenuptial agreement creating trust in favor of wife which guaranteed her stated income during her lifetime and required that any excesses over stipulated amount were to be paid by her to "the party of the first part," her husband, in annual adjustments *held* to require such accounting for excesses received by her during her lifetime and not during the husband's lifetime only.

**3. Executors and administrators** ⬅⟲45—**Widow, under antenuptial agreement, held not entitled to receive, for purpose of distribution, income of trust in excess of agreed amount.**

Widow, under antenuptial agreement creating trust guaranteeing to her a stated income per month and requiring her to account for income received in excess of that amount, *held* not entitled, during administration of the husband's estate, to receive income in excess of amount guaranteed merely for purpose of permitting her to make distribution to parties entitled to it, nor was she entitled to receive it as administratrix to await orders of court.

**4. Executors and administrators** ⬅⟲314(6)—**Administratrix, interested adversely to estate, is not, as administratrix, necessary party to ancillary proceeding for distribution pending final settlement.**

In ancillary proceeding, pending final settlement of estate, by heirs to secure distribution of funds of estate in hands of trustees, administratrix, who, under trust agreement, is interested adversely to estate, is not a necessary party as administratrix; an administrator ad litem having been appointed, under Code 1923, § 6057.

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Bill in equity by Rose Johns Cannon against the Birmingham Trust & Savings Company, with petition for intervention by Carl W. Johns and others. From the decree, Rose Johns Cannon appeals. Affirmed.

Pending final settlement of the administration of the estate of L. W. Johns, deceased, in the Jefferson circuit court, in equity, three of the heirs and distributees filed their petition of intervention to secure the distribution of funds of the estate in the hands of the trustee, the Birmingham Trust & Savings Company. The parties respondent to the petition are the other heirs and distributees; the Trust Company; Rose Johns Cannon, who is the widow of said L. W. Johns, and also administratrix of his estate; and C. S. Williams, as administrator ad litem of said estate. The prayer of the petition involves a construction of the provisions of a postnuptial agreement entered into on July 4, 1908, between the said L. W. Johns and his said wife, Rose Johns, who is now Mrs. Cannon. Under this agreement 180 shares of the common stock, and 188 shares of the preferred stock, of the American Cities Railway & Light Company were transferred by L. W. Johns to the said trustee, upon the following uses, terms, and conditions:

"First. To hold the legal title to one-half of said stock, both common and preferred, evidenced by such certificates of each kind, to be designated by the trustee, for and during the natural life of the party of the second part for her use and benefit during such period, and to hold the remaining shares of stock; both common and preferred, to be evidenced by separate certificates of each kind; to be also designated by the trustee, for the use and benefit of the party of the second part in fee simple, the interest of the party of the second part in the shares of stock held by her for life

and in those held by her in fee simple to be a several interest and not an undivided interest.

"Second. To transfer, incumber, or dispose of the half of said stock, in which the party of the second part has a life interest, only with the consent of both parties to this agreement for the purpose of reinvestment, or of the necessary maintenance of the party of the second part. To transfer, incumber, or dispose of the half of said stock, both common and preferred, in which the party of the second part has a fee-simple interest, with the consent of the party of the second part alone for a like purpose. No transfer, incumbrance, or other disposition of any part of said stock, either common or preferred, and whether owned by the party of the second part in fee simple or for life only, shall be made, except with the consent of the trustee, to be evidenced by its signature to the instrument of transfer, which assent may be withheld if in the judgment of the trustee it is to the best interest of the party of the second part; the intent thereof being that no legal or equitable interest in said stock, vested in the party of the second part by this agreement, shall be divested out of the party of the second part, except with the approval and written assent of the trustee.

"Third. During the natural life of the party of the second part to collect all dividends which have accrued or may hereafter accrue on said stock, and to pay the same to the party of the second part, whose receipt therefor shall be a complete acquittance for the trustee, and the trustee shall not be required to see to the application of the amounts so paid to the purpose hereinafter expressed.

"Fourth. Upon the death of the party of the second part, to transfer one-half of the shares of said common stock and the one-half of the shares of said preferred stock, in which the party of the second part has only a life interest, to the party of the first part, if living, otherwise, to his legal representatives, distributees, or legatees, and to transfer the remaining one-half of said common stock and the remaining one-half of said preferred stock in which the party of the second part has a fee-simple interest in her personal representatives, distributees, or legatees, and to cause such transfer to be registered on the stock books of said corporation.

"Fifth. * * * If the amount of dividends accruing on said stock during any month during the natural life of the party of the second part shall exceed the sum of one hundred dollars ($100.00), the surplus over said sum for any such month, when paid to the party of the second part, shall be paid by her to the party of the first part; and if the amount of such dividends during any month shall be less than the sum of one hundred dollars ($100.00), then the deficiency between the amount of such dividends for any such month or months and the said sum of one hundred dollars ($100.-00) shall be paid by the first party to the party of the second part, and for the amount of any such deficiency or deficiencies the party of the second part shall have a charge or lien upon the following described property of the party of the first part, situated in Jefferson county, Ala., and described as follows: A fractional part of section 9, township 18, range 4 west, more particularly described as follows: * * *

"Settlements of such excesses or deficiencies to be made in annual periods *during the natural life of the party of the second part*, and such excesses and deficiencies to offset each other; the intent of this provision being that the party of the second part shall have during her natural life a fixed income of *not less than one hundred dollars* ($100.00) per month during that term, and *not in excess of that sum*, out of the dividends of such stock primarily, and if they are insufficient, out of the property herein described of the party of the first part or as a personal claim against such party—such allowance to be in lieu of any claim of alimony in the event of a separation of the parties hereto.

"The party of the second part agrees out of the amount so received by her each month, so long as the parties continue to live together, and so long as the party of the first part maintains a home for the party of the second part suitable to her condition in life, to contribute to the maintenance of said home all except the sum of twenty dollars ($20.00), which sum she is to expend monthly for her personal uses. In the event of the separation of the parties hereto, then the obligation of the party of the second part to devote any part of the said monthly allowance to the support of such home shall cease and determine, and said sum shall be used by her solely for her individual maintenance and support." (Italics supplied.)

The demurrer of Rose Johns Cannon to the petition was overruled, and on final hearing the relief prayed was granted, and the trustee was directed to apply the balance of income in its hands ($4,526.81), first, to the payment of the costs of the proceeding, and the remainder in distribution to the heirs of L. W. Johns, as shown to be entitled. It was further ordered:

"That any future balances of net income in the hands of the trustee from proceeds of the trust fund, after accounting to the complainant, Rose Johns Cannon, for her share thereof, under the agreement of July 4, 1908, as ordered in the decree of this court, rendered March 10, 1923, to be held by the trustee as undistributed income subject to the future orders of this court, until she shall have made final settlement of her administration of the estate of L. W. Johns, deceased, in cause numbered 116 in this court."

This final decree was based on the finding of law (settled by the decree on the demurrer dated February 14, 1923) that, under the provisions of the trust agreement, Rose Johns Cannon was entitled to have from the trust estate income $100 per month during her life, and no more, and, on the findings of fact that she had received that amount in full, that no debts of the estate remained unpaid, except a small amount due to her as administratrix, and but little remained to be done in that behalf, and that it would be inequitable to hold said balance in the hands of the trustee pending final settlement of the estate.

Rose Johns Cannon appeals, and assigns

for error the ruling on the demurrer, and also the rendition of the final decree.

Harsh, Harsh & Harsh and J. B. Burgin, all of Birmingham, for appellant.

Counsel argue for error in the decree, but without citing authorities.

Theodore J. Lamar and Henry Upson Sims, both of Birmingham, for appellees.

In support of the decree, counsel cite Owen v. Bankhead, 76 Ala. 143; Chandler v. Wynne, 85 Ala. 301, 4 So. 653.

SOMERVILLE, J. The chief contentions of the appellant, Mrs. Rose Johns Cannon, are (1) that under a proper construction of the "July agreement" she is entitled to retain all of the income from the trust estate, and is not limited to $100 per month; (2) that in any event, under the express terms of the agreement, the trustee is required to pay the entire trust income, as collected, over to her as beneficiary, leaving it to her to discharge her personal obligation to account for the excess above $100 per month; (3) that, whether she is entitled to receive such income personally or not, she is in any event entitled to receive it, in the capacity of administratrix, as assets of the Johns' estate; and (4) that she, as administratrix, is a necessary party to the proceeding.

[1] 1. After providing that, if the dividends accruing in any month during the life of Mrs. Johns should exceed $100, the excess should be by her paid over to L. W. Johns, and that, if such dividends accruing in any month should be less than $100, then the deficiency should be paid by him to her, and that any and all such deficiencies should be secured by a lien on certain described real estate, the instrument further declares:

"Settlements of such excesses or deficiencies to be made in annual periods *during the natural life* of the party of the second part [Mrs. Johns], and such excesses or deficiencies to offset each other; the intent of this provision being that the party of the second part shall have during her natural life a fixed income of *not less than $100 per month during that term,* and *not in excess of that sum,* out of the dividends of such stock primarily." (Italics supplied.)

We do not see how language could express an intention more clearly and unmistakably. Certainly, impartial minds cannot differ upon the conclusion that Mrs. Johns was thereby limited to an income of $100 per month, and that the primary purpose of the trust agreement was to give her exactly that amount,—*no more and no less.* Nor does an examination of the entire instrument discover any provision which is in any way or degree contradictory of that purpose.

[2] This provision was intended, with equal clearness and certainty, to fix the income of Mrs. Johns during *her* lifetime, and not during the lifetime of her husband, as ingeniously argued by counsel. It is true that monthly excesses of the stipulated amount, if any, are required to be paid by her to "the party of the first part," her husband, in annual adjustments; but these annual adjustments are to be made *during the lifetime of Mrs. Johns,* and not during their joint lives merely. Unquestionably, the excess over Mrs. Johns' fixed income was a trust fund in her hands. It was not discharged of the trust by the death of L. W. Johns, but survived as an obligation due to his estate, as do all such money obligations.

[3] 2. Appellant's second contention is that, pursuant to the strict letter of the trust agreement, she is personally entitled, even in this equitable proceeding, to receive all the dividends collected by the trustee, including the excess above her fixed income, whatever its ultimate ownership and disposition might be.

This contention, though technically plausible, is wholly without merit. The primary purpose of the trust was to assure to Mrs. Johns a stipulated income during her life. For that purpose, and that alone, she was made the recipient of all the dividends collected by the trustee. The duty of the trustee to pay them over to her, and her corresponding right to receive them as collected, looked merely to the satisfaction of her income claims; and while, in any controversy between the trustee and the beneficiary only, the latter's right would be enforced, yet, in a court of equity which is dealing with the trust as a whole, with jurisdiction of the estate, and of the fund, and of all the parties interested, the court will administer the fund according to the purpose of the trust. That purpose clearly was to return to the donor, L. W. Johns, or contingently to his estate or heirs, the entire excess of the dividends above $100 per month. It would be a vain and idle ceremony, under the circumstances here existing, to place that excess in the hands of Mrs. Johns Cannon, in order that she may distribute it to those entitled, or pretend to pay it to herself, as administratrix, to await the further orders of the court.

3. It would be equally vain and useless to require the trustee to pay the fund to the administratrix, and then order her to make the distribution as such representative. If she had the fund in her hands as administratrix, the court would have the unquestionable right to order its distribution to the heirs exactly as has been done, as an administrative process; the estate being before the court for that purpose. If a specific reason need be found for the direct action decreed by the court, it would seem that the antagonistic interest of Mrs. Johns Cannon,

to the estate she represents and to the heirs, would be sufficient.

The fact that there are some debts incurred by the administratrix, as the representative of the estate, is not an obstacle to such a distribution, since, under the order and decree of the court, the future excess income from the trust property will be available for their satisfaction if her claim should be allowed on final settlement of the estate.

[4] 4. It was, of course, necessary for the estate to be represented in this proceeding, which is ancillary to its administration; but the statute (Code, 1923, § 6057) makes it the duty of the court, in any proceeding where the personal representative is interested adversely to the estate, to appoint an administrator ad litem. In this case such an administrator was properly appointed, and was made a party to the petition. The estate was therefore properly represented, and no one can complain of the fact that Mrs. Johns Cannon was not made a party, as administratrix of the estate.

Our conclusion is that the decree of the circuit court is free from error, and should be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.